UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

CRISTIAN RODRIGUEZ,

    *Plaintiff*,

      v.

ALEJANDRO MAYORKAS, Secretary of the Department of Homeland Security, *et. al*.

    *Defendants*.

Civil Action No. 21-CV-3129-MKB

February 15, 2022

*AMICI CURIAE* BRIEF IN SUPPORT OF
PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

## TABLE OF CONTENTS

Page

INTRODUCTION ........................................................................................................................ 1

INTEREST OF AMICI CURIAE ................................................................................................. 1

SUMMARY OF POSITION OF AMICI CURIAE ...................................................................... 2

ARGUMENT ................................................................................................................................. 5

I. Judicial review of nondiscretionary legal errors, made in adjudicating waivers of inadmissibility and U-Visa petitions, is necessary in order to effectuate the Congressional intent underlying 8 U.S.C. § 1101(a)(15)(U). ............................................ 5

    A. Congress created the U-Visa program to protect noncitizen survivors and empower law enforcement agencies in the investigation of serious crimes by incentivizing noncitizen survivors to report crimes committed against them. ............................................................................................................... 5

    B. Congress recognized that most U-Visa petitioners would require a waiver of inadmissibility before receiving a U-Visa, and Congress therefore created a special waiver provision, specific to U-Visa petitioners, which was intended to function separately and independently from the general waiver criteria. ................................................................................................. 8

    C. 8 U.S.C. § 1252(a)(2)(B) does not preclude this Court from reviewing the nondiscretionary legal errors made by USCIS in its adjudication of Mr. Rodriguez's wavier application. ............................................................................ 10

        1. USCIS conflated two separate legal standards in review of Mr. Rodriguez's waiver application, thus committing plain legal error which is reviewable by this Court. ........................................................... 10

        2. Accepting the government's interpretation of 8 U.S.C. § 1252(a)(2)(B) would contravene congressional intent by allowing the government to conflate separate legal standards that Congress meant to be kept separate. ..................................................................... 11

    D. Even if this Court finds that it lacks jurisdiction to review Mr. Rodriguez's waiver of inadmissibility, it still retains authority to review his U-Visa application. .................................................................................................... 12

        1. Consistent with its attempts to incentivize broad and continued cooperation with law enforcement, Congress intended that U-Visa petitioners would be able to refile their waiver applications. ................. 13

        2. Under the government's interpretation of 8 U.S.C. § 1252(a)(2)(B), this refiling of waiver applications would be futile for many applicants. ..................................................................................................... 14

CONCLUSION ............................................................................................................................ 15

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Abramski v. United States*,
 573 U.S. 169 (2014) .................................................................................................................5, 15
*INS v. Cardoza-Fonseca*,
 480 U.S. 421 (1987) .................................................................................................................9, 12
*L.D.G. v Holder*,
 744 F.3d 1022 (7th Cir. 2014) .........................................................................................................2
*Mantena v. Johnson*,
 809 F.3d 721 (2d Cir. 2015) ..........................................................................................................11
*Marx v. Gen. Revenue Corp.*,
 568 U.S. 371 (2013) .........................................................................................................................9
*Matter of Hranka*,
 16 I&N Dec. 491 (B.I.A. 1978) .......................................................................................................9
*Matter of Khan*,
 26 I&N Dec. 797 (B.I.A. 2016) .....................................................................................................10
*Perez Perez v. Wolf*,
 943 F.3d 853 (9th Cir. 2019) .........................................................................................................12
*Rodriguez v. Nielsen*,
 No. 16-CV-7092, ECF No. 47 (Dec. 12, 2017) ..............................................................................2
*Sepulveda v. Gonzales*,
 401 F.3d 59 (2d Cir. 2004) .............................................................................................................11
*State of Washington v. Trump*,
 No. 15-35105 (9th Cir. 2016) ..........................................................................................................2
*United States v. Castleman*,
 134 S. Ct. 1405 (2014) .....................................................................................................................2

**STATUTES**

8 C.F.R. § 212.17(b)(3) ......................................................................................................................13
8 U.S.C. § 1101(a)(15)(U) ........................................................................................................ passim
8 U.S.C. § 1154(a)(1) ...........................................................................................................................5
8 U.S.C. § 1182(d)(3) ..............................................................................................................8, 10, 12
8 U.S.C. §§ 1182(d)(3) and 1182(d)(14) ...........................................................................................10
8 U.S.C. § 1182(d)(14) ............................................................................................................. passim
8 U.S.C. § 1252(a)(2) ....................................................................................................................5, 15
8 U.S.C. § 1252(a)(2)(B) ........................................................................................................... passim
Victims of Trafficking and Violence Protection Act of 2000, Pub. L. No. 106-386, 114 Stat.
 1534 (2000) ...........................................................................................................................5, 6, 7

**OTHER AUTHORITIES**

72 Fed. Reg. at 53,018 .........................................................................................................................8

72 Fed. Reg. at 53,019 (Oct. 2007) ................................................................................................13
ICE, *Directive 11005.3* ....................................................................................................................7
Stefano Comino et al., *Silence of the Innocents: Undocumented Immigrants' Underreporting of Crime and Their Victimization* ..............................................................................................3
USCIS, *U Visa Demographic: Analysis of Data Through FY 2019* (Mar. 2020) ............................8

## INTRODUCTION

This action asks the Court to redress the legal errors committed by the U.S. Citizenship and Immigration Services ("USCIS") in its unlawful adjudication of Plaintiff Cristian Rodriguez's ("Mr. Rodriguez's") application for a U-Visa. The government's erroneous denial of Mr. Rodriguez's application was riddled with legal errors, as set forth in Mr. Rodriguez's complaint and brief in opposition to the government's motion to dismiss. Now, the government seeks to inoculate itself from this Court's review by claiming this Court lacks subject-matter jurisdiction of the government's denial of a waiver of inadmissibility and, separately, its U-Visa adjudication. As set forth below, however, the government's untenable position in this case undermines the entire U-Visa statutory scheme. *Amici*, having special expertise in this area and strong interests in the proper review of inadmissibility waivers and U-Visa applications for survivors of violence, bring their expertise before this Court to demonstrate why judicial review can and, indeed, *must* exist for nondiscretionary legal errors committed in both inadmissibility waiver decisions and U-Visa decisions.

## INTEREST OF *AMICI CURIAE*[1]

ASISTA Immigration Assistance ("ASISTA") is a national organization dedicated to helping attorneys in immigration matters concerning noncitizen survivors of violence. ASISTA has worked with Congress to create and expand routes to immigration status for survivors of domestic violence, sexual assault, and other violent crimes. These efforts culminated in the enactment of the groundbreaking Violence Against Women Act ("VAWA") of 1994 and its progeny. ASISTA trains and provides technical support to local law enforcement officials, civil

---

[1] *Amici* certify that this brief was authored entirely by counsel for *Amici* and not by counsel for any party, in whole or in part; no party or counsel for any party contributed money to fund preparing or submitting the brief; and, apart from *Amici*, their members, and their counsel, no other person contributed money to fund preparing or submitting the brief.

and criminal court judges, and domestic violence advocates, as well as nonprofit, pro bono, and private attorneys working with noncitizen survivors. ASISTA has previously filed amicus briefs with the U.S. Supreme Court and various federal courts of appeal. *See, e.g.*, *United States v. Castleman*, 134 S. Ct. 1405 (2014); *State of Washington v. Trump*, No. 15-35105 (9th Cir. 2016); *L.D.G. v Holder*, 744 F.3d 1022 (7th Cir. 2014). ASISTA is a nonprofit organization, having no corporate parents, and is not publicly traded.

The Tahirih Justice Center ("Tahirih") is the largest multicity direct services and policy advocacy organization specializing in assisting immigrant survivors of gender-based violence. In five cities across the country, Tahirih offers legal and social services to women, girls, and other immigrants fleeing all forms of gender-based violence, including human trafficking, forced labor, domestic violence, rape and sexual assault, and female genital cutting/mutilation. Since its beginning in 1997, Tahirih has provided free legal assistance to more than 30,000 individuals, many of whom have experienced the significant psychological and neurobiological effects of that trauma. Through direct legal and social services, policy advocacy, and training and education, Tahirih protects immigrant survivors and promotes a world where they can live in safety and dignity. Tahirih is a nonprofit organization, having no corporate parents, and is not publicly traded.

Both ASISTA and Tahirih served as *Amici Curiae* in Mr. Rodriguez's previous suit before this Court. *See Rodriguez v. Nielsen,* No. 16-CV-7092, ECF No. 47 (Dec. 12, 2017).

## SUMMARY OF POSITION OF AMICI CURIAE

Immigrant populations are particularly vulnerable to crime, especially the kinds of crimes that happen away from the public eye and inside people's homes. Mr. Rodriguez, specifically, suffered a home invasion, but immigrant communities are also particularly vulnerable to other violent crimes, such as domestic violence, gang violence, sexual assault, and human trafficking.

2

Perpetrators prey on immigrant populations because they are less likely to report crimes committed against them, in part because they fear being deported by law enforcement agencies if they seek out their assistance.  *See* Stefano Comino et al., *Silence of the Innocents: Undocumented Immigrants' Underreporting of Crime and Their Victimization*, 39 J. Pol'y Analysis & Mgmt. 1214 (2020).  Furthermore, because noncitizens are hesitant to report crimes, law enforcement agencies are stifled in their ability to keep communities safe by detecting, investigating, and prosecuting criminals.  This compromises the safety of society as a whole.

Congress sought to limit the ability of abusers to leverage immigration laws and to exploit the fear of deportation against their victims by passing legislation to end a perpetrator's full and complete control over the survivor.  Congress created the U-Visa program, which serves to alleviate noncitizens' fear of assisting law enforcement by offering them legal protections and temporary work authorization.  *See* 8 U.S.C. § 1101(a)(15)(U). Although the U-Visa statute affords USCIS certain levels of discretion in ultimately granting or denying waivers of inadmissibility and U-Visa applications, Congress intentionally bound this discretion with specific statutory directives to which USCIS must adhere.  *See, e.g.*, 8 U.S.C. § 1182(d)(14). Congress—and U-Visa applicants—depend on judicial review by Article III courts to ensure agencies like USCIS are not exceeding their statutory authority and to ensure agency action does not thwart congressional intent.

Instead of defending its (supposed) application of 8 U.S.C. § 1182(d)(14), the government seeks to shut the door to any judicial review by pointing to a jurisdiction-stripping statute, 8 U.S.C. § 1252(a)(2)(B).  As set forth in Mr. Rodriguez's brief in opposition to the government's motion to dismiss, the government's argument fails under the plain language of the statutory text and prevailing case law.  Furthermore, applying this provision in the manner in

3

which the government proposes would undermine the statutory purpose of the U-Visa program. Section 1182(d)(14) is uniquely available to U-Visa applicants. 8 U.S.C. § 1182(d)(14) (applicable to "nonimmigrants described in section 1101(a)(15)(U)"). It has its own criteria distinct from other waivers of inadmissibility. *Id.* (setting forth element of "public or national interest"). Without meaningful judicial oversight of USCIS's application of the nondiscretionary components of 8 U.S.C. § 1182(d)(14), USCIS would be given essentially unbridled discretion to selectively apply certain provisions of the law while ignoring others. Such unbridled discretion eviscerates the framework that Congress so carefully laid out in the U-Visa program.

Furthermore, under the argument advanced by the government, many U-Visa petitioners would be caught in a cruel cycle of inadmissibility wherein the erroneous denial of the petitioner's initial waiver effectively blocks the petitioner from seeking redress of any subsequent errors in the adjudication of his or her U-Visa application. Essentially, USCIS would be free to avoid an 8 U.S.C. § 1182(d)(14) analysis and, in doing so, insulate themselves against review of any other errors committed in the denial of a U-Visa application. This surely cannot be the regulatory scheme that Congress intended.

If noncitizen crime survivors are led to believe that waiver determinations and visa adjudications are left to the unbridled discretion of USCIS agents who may misapply statutory directives, the very purpose of the U-Visa crumbles. If this Court were to determine that there is no judicial review for Mr. Rodriguez's applications, it sends the message that there would also be no judicial oversight to ensure the fair and consistent application of the correct legal standards for either inadmissibility waivers or, by extension, U-Visa applications. This would fundamentally undermine the purpose of 8 U.S.C. § 1101(a)(15)(U), as survivors would no longer feel confident that cooperation with law enforcement will lead to legal protections.

4

When interpreting a statute, the Court should "interpret the relevant words not in a vacuum, but with reference to the statutory context, structure, history and purpose." *Abramski v. United States*, 573 U.S. 169, 179-83 (2014) (rejecting petitioner's reading of a statute because it would "undermine [the law's] core provisions," "defeat the point of [other provisions]," and "deny effect to the regulatory scheme," and because "no part of that [regulatory] scheme would work" under petitioner's interpretation). Defendants' interpretation of 8 U.S.C. § 1252(a)(2) would undermine the central purpose of the U-Visa program and would create a regulatory framework that Congress simply could not have intended. This Court should reject Defendants' overbroad and unfounded interpretation of 8 U.S.C. § 1252(a)(2) and exercise its subject-matter jurisdiction to review USCIS's misadjudication of Mr. Rodriguez's inadmissibility waiver application and U-Visa application.

## ARGUMENT

**I.   Judicial review of nondiscretionary legal errors, made in adjudicating waivers of inadmissibility and U-Visa petitions, is necessary in order to effectuate the Congressional intent underlying 8 U.S.C. § 1101(a)(15)(U).**

**A.   Congress created the U-Visa program to protect noncitizen survivors and empower law enforcement agencies in the investigation of serious crimes by incentivizing noncitizen survivors to report crimes committed against them.**

The U-Visa[2] represents the culmination of a decades-long effort to ensure justice for noncitizen survivors of violent crime and to protect the American public from the perpetrators of such crimes. Legislative efforts began in 1994, with the passage of VAWA, which established legal protections for noncitizens who are subjected to battery or extreme cruelty by a spouse who is a U.S. citizen or lawful permanent resident. *See* 8 U.S.C. § 1154(a)(1). VAWA allowed those noncitizen survivors to "self-petition" for lawful permanent resident status, without needing to

---

[2] The term "U-Visa" is derived from the statutory subsection 8 U.S.C. § 1101(a)(15)(U), which lays out the eligibility criteria for noncitizen survivors to obtain nonimmigrant status.

5

rely on their spouse as a sponsor. *See id.* Thus, VAWA freed noncitizens from dependence on their abusive spouses, thereby eliminating a significant source of control leveraged by their abusers.

However, Congress recognized that VAWA was limited in its reach—it was aimed at those noncitizens who were victimized by their relatives or spouses. VAWA offered little protection to noncitizens who were tortured, raped, kidnapped, or trafficked by strangers. For those survivors, justice was often elusive. As the Department of Homeland Security has acknowledged, "[i]mmigrants, especially women and children, can be particularly vulnerable to criminal activity like human trafficking, domestic violence, sexual assault, stalking, and other crimes" because of "language barriers[,] . . . lack of understanding of U.S. laws, fear of deportation, and cultural differences." DHS, *U&T Visa Law Enforcement Resource Guide for Federal, State, Local, Tribal & Territorial Law Enforcement, Prosecutors, Judges & Other Government Agencies* ("U&T Guide").[3]

Simply put, noncitizen survivors are less likely to report a crime, in part because they fear being deported by law enforcement. Indeed, the threat of deportation has a well-recognized "chilling effect" on "the willingness and ability of noncitizen crime victims to contact law enforcement, participate in investigations and prosecutions, [and] pursue justice." ICE, *Directive 11005.3, Using a Victim-Centered Approach with Noncitizen Crime Victims* (Aug. 10, 2021).[4] As such, violent criminals can often perpetrate heinous crimes against noncitizens with relative impunity.

---

[3] https://www.dhs.gov/sites/default/files/publications/U-and-T-Visa-Law-Enforcement-Resource%20Guide_1.4.16.pdf.
[4] https://www.ice.gov/doclib/news/releases/2021/11005.3.pdf.

6

To combat this, Congress created the U-Visa. The U-Visa is available to a noncitizen survivor of a qualifying crime who has "been helpful, is being helpful, or is likely to be helpful to a Federal, State, or local law enforcement official . . . investigating or prosecuting [the] criminal activity." 8 U.S.C. § 1101(a)(15)(U). Once granted, the U-Visa comes with legal protections, work authorization, and potentially a path to lawful permanent resident status.

Thus, the U-Visa helps ensure justice for noncitizen survivors by strengthening the relationships between law enforcement agencies and immigrant communities. Rather than being deterred by a fear of deportation, these survivors are reassured that cooperating with law enforcement will not result in their deportation. By offering significant legal protections to those who assist in the investigation or prosecution of crime, the U-Visa "encourages victim cooperation with law enforcement, engenders trust in ICE agents and officers, and bolsters faith in the entire criminal justice and civil immigration system." ICE, *Directive 11005.3*. Indeed, as the Department of Homeland Security appreciates, Congress devised the U-Visa "to strengthen the ability of law enforcement agencies to investigate and prosecute serious crimes and trafficking in persons, while offering protections to victims of such crimes without the immediate risk of being removed from the country." *U&T Guide*. Congress believed that "creating a new nonimmigrant visa classification will facilitate the reporting of crimes to law enforcement officials by . . . [noncitizens][5] who are not in lawful immigration status" and thus "strengthen the ability of law enforcement agencies to detect, investigate, and prosecute [crimes]." Victims of Trafficking and Violence Protection Act of 2000, Pub. L. No. 106-386, 114 Stat. 1534 (2000).

In sum, "Congress wanted to encourage [noncitizens] who are victims of criminal activity to report the criminal activity to law enforcement and fully participate in the investigation and

---

[5] *Amici* uses "noncitizen" in the place of "alien." This alteration is consistent with USCIS's current terminology and does not change any meaning. *See Noncitizen*, USCIS Glossary, available at https://www.uscis.gov/tools/glossary.

7

prosecution of the perpetrators of such criminal activity." New Classification for Victims of Criminal Activity; Eligibility for "U" Nonimmigrant Status, 72 Fed. Reg. at 53,018 (citing 114 Stat. § 1513(a)(1)(B)) (Oct. 2007).

> **B. Congress recognized that most U-Visa petitioners would require a waiver of inadmissibility before receiving a U-Visa, and Congress therefore created a special waiver provision, specific to U-Visa petitioners, which was intended to function separately and independently from the general waiver criteria.**

The U-Visa is available to qualifying noncitizens, 8 U.S.C. § 1101(a)(15)(U), but the applicant must be admissible or have been granted a waiver of inadmissibility, 8 U.S.C. § 1182(d)(14). A noncitizen present in the United States without lawful admission to this country, e.g., one who unlawfully crossed the border, is generally deemed inadmissible. *Id.* § 1182(a)(6). The vast majority of U-Visa petitioners were not lawfully admitted. USCIS, *U Visa Demographic: Analysis of Data Through FY 2019*, 5-6 (Mar. 2020) (finding that 80% of U-Visa applicants are inadmissible and that 79% of approved primary applicants are present without admission).[6] These U-Visa petitioners must seek a "waiver of inadmissibility" from the Secretary of Homeland Security before being granted a U-Visa. In this sense, for most U-Visa petitioners, the waiver of admissibility acts as a prerequisite or threshold requirement to the U-Visa.

Recognizing that a vast majority of U-Visa applicants would require waivers of inadmissibility, Congress added a special provision that enables the Secretary of Homeland Security to waive the inadmissibility for "a nonimmigrant described in section 1101(a)(15)(U) of this title"—i.e., a U-Visa applicant—"if the Secretary of Homeland Security considers it to be in the public or national interest to do so." *Id.* § 1182(d)(14). Ordinarily, waiver applications are evaluated under the standard, generally applicable waiver provision found in 8 U.S.C.

---

[6] https://www.uscis.gov/sites/default/files/document/reports/U_Visa_Report_-_Demographics.pdf.

8

§ 1182(d)(3), which is a purely discretionary waiver that applies to all noncitizens entering the United States for temporary purposes, including tourists and students. Under that provision, the Secretary of Homeland Security has *different* discretion in granting a waiver. In exercising that discretion under that provision, the Secretary of Homeland Security must consider "the risk of harm to society if the applicant is admitted," "the seriousness of the applicant's immigration law, or criminal law violations, if any," and "the nature of the applicant's reasons for wanting to enter the United States." *Matter of Hranka*, 16 I&N Dec. 491 (B.I.A. 1978). Meanwhile, under the special provision specific to U-Visa petitioners, the Secretary of Homeland Security must consider whether it is "in the public or national interest" to waive the petitioner's inadmissibility. 8 U.S.C. § 1182(d)(14). The two waiver provisions are *not* the same, and USCIS cannot treat them the same.

This language—directing the Secretary of Homeland Security to consider "the public or national interest"—is present in the U-Visa–specific provision, but is conspicuously absent in the general waiver provision. "Where Congress includes particular language in one section of a statute, but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely." *INS v. Cardoza-Fonseca*, 480 U.S. 421, 432 (1987). Therefore, Congress clearly intended for U-Visa petitioners to be evaluated under a separate, substantively distinct standard, compared to the general population.

Indeed, Congress would not have gone to the trouble of enacting an entirely distinct provision specific to U-Visa petitioners if it had intended for those applicants to be evaluated under the general standard which already existed. Under the "canon against surplusage," a court should not adopt an interpretation of one provision that would render meaningless another provision of that same statutory scheme. *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 386

9

(2013). Thus, the only reasonable interpretation is that Congress intended for 8 U.S.C. §§ 1182(d)(3) and 1182(d)(14) to impose different standards, and the U-Visa–specific standard is intended to effectuate the overall purpose of the U-Visa scheme.

In fact, there is authority to suggest that Congress intended the U-Visa–specific provision to be more lenient than the general waiver standard. *See Matter of Khan*, 26 I&N Dec. 797, 803 (B.I.A. 2016) (defining 8 U.S.C. § 1182(d)(14) as a "much broader waiver" than 8 U.S.C. § 1182(d)(3)). Simply put, recognizing that the vast majority of U-Visa petitioners would require waivers, Congress enacted a separate, substantively distinct, more lenient waiver provision for U-Visa applicants. This is consistent with Congressional intent to make the U-Visa broadly accessible to undocumented immigrants so as to foster more cooperation with law enforcement.

  **C.** **8 U.S.C. § 1252(a)(2)(B) does not preclude this Court from reviewing the nondiscretionary legal errors made by USCIS in its adjudication of Mr. Rodriguez's wavier application.**

    **1.** **USCIS conflated two separate legal standards in review of Mr. Rodriguez's waiver application, thus committing plain legal error which is reviewable by this Court.**

As further laid out in Mr. Rodriguez's brief in opposition, Mr. Rodriguez applied for a waiver of inadmissibility under *both* 8 U.S.C. § 1182(d)(3), which is the general waiver provision, *and* 8 U.S.C. § 1182(d)(14), which is the provision specifically created for U-Visa petitioners. Contrary to Congressional intent, USCIS failed to evaluate Mr. Rodriguez's application separately under each standard. Specifically, the government failed to separately evaluate the application under the more lenient 8 U.S.C. § 1182(d)(14) standard. USCIS has no discretion to omit such analysis for a vehicle to a waiver of admissibility that was provided to Mr. Rodriguez by Congress.

But the government says this Court is powerless to redress the wrong. While the government argues that 8 U.S.C. § 1252(a)(2)(B) strips this Court of jurisdiction to review

10

USCIS's adjudication of Mr. Rodriguez's waiver application, the statute does not preclude the Court from reviewing nondiscretionary errors of law.  *See Sepulveda v. Gonzales*, 401 F.3d 59, 62-64 (2d Cir. 2004); *Mantena v. Johnson*, 809 F.3d 721, 728-29 (2d Cir. 2015).  Indeed, although 8 U.S.C. § 1252(a)(2)(B) prohibits judicial review of purely discretionary matters that are left to USCIS, the statute does not strip this court of its power to review legal errors such as this one.  *See* Pl.'s Resp. in Opp'n at 7-18.

It is the fundamental duty of this Court to say what the law is and determine whether the law has been followed.  The government's interpretation of 8 U.S.C. § 1252(a)(2)(B) would deprive this Court of its ability to ensure that agency action is consistent with the law, thus preventing the Court from performing its most important role.  The government committed clear legal errors by conflating different provisions of the law and misapplying the relevant legal standards, in direct opposition to congressional intent.  While the government may have some "discretion" in ultimately granting or denying the waiver application, it does not have discretion in selectively disregarding provisions of the law and in choosing to apply one legal standard while completely ignoring other relevant standards.  This Court has the capacity—and indeed the duty—to correct these legal errors.  Foreclosing judicial review for Mr. Rodriguez, however, also sets dangerous legal precedent for so many others in the same administrative posture—seeking a waiver of inadmissibility under 8 U.S.C. § 1182(d)(14) in order to meaningfully apply for a U-Visa.

  **2. Accepting the government's interpretation of 8 U.S.C. § 1252(a)(2)(B) would contravene congressional intent by allowing the government to conflate separate legal standards that Congress meant to be kept separate.**

As discussed above, by enacting 8 U.S.C. § 1182(d)(14), Congress deliberately intended for U-Visa petitioners to be eligible for an inadmissibility waiver under a separate, distinct legal

11

standard. This is evidenced by the fact that 8 U.S.C. § 1182(d)(14) directs the Attorney General to consider "the public or national interest" while 8 U.S.C. § 1182(d)(3) contains no such language. *See Cardoza-Fonseca*, 480 U.S. at 432 ("Where Congress includes particular language in one section of a statute, but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely.").

Under the government's interpretation of 8 U.S.C. § 1252(a)(2)(B), USCIS would be free to conflate these two standards without any judicial review. Indeed, that is precisely what occurred in Mr. Rodriguez's case. The government completely ignored the fact that Congress had created a separate U-Visa–specific provision for waiver applicants, and instead chose to selectively apply the general waiver standard. The government now offers an interpretation of 8 U.S.C. § 1252(a)(2)(B) that would enable it to continue ignoring the express intent of Congress. This Court should effectuate congressional intent by exercising judicial review to ensure that USCIS observes and applies the separate legal standards so carefully laid out by Congress.

> **D.   Even if this Court finds that it lacks jurisdiction to review Mr. Rodriguez's waiver of inadmissibility, it still retains authority to review his U-Visa application.**

Concurrently with his waiver application, Mr. Rodriguez also filed a U-Visa petition, which was erroneously denied. The government does not contend that this Court lacks jurisdiction to review the denial of Mr. Rodriguez's U-Visa application. Indeed, such a position would be untenable. *See Perez Perez v. Wolf*, 943 F.3d 853 (9th Cir. 2019) (holding that judicial review of U-Visa petitions is not prohibited under 8 U.S.C. § 1252(a)(2)(B)). Instead, the government makes the unsupported argument that if the Court is precluded from reviewing the waiver application, it must also be barred from considering the U-Visa petition itself. This overbroad and ungrounded interpretation of 8 U.S.C. § 1252(a)(2)(B) would directly contravene congressional intent by undermining the entire regulatory scheme.

12

### 1. Consistent with its attempts to incentivize broad and continued cooperation with law enforcement, Congress intended that U-Visa petitioners would be able to refile their waiver applications.

When creating the U-Visa program, the agency itself specifically provided that U-Visa petitioners may refile their waiver applications. *See* 8 C.F.R. § 212.17(b)(3) ("nothing in this paragraph is intended to prevent an applicant from re-filing a request for a waiver of ground of inadmissibility"). Thus, the agency itself promulgated a regulation to ensure that a waiver denial would not permanently foreclose an immigrant's eligibility for a U-Visa.

This is consonant with the underlying intent behind the U-Visa program as a whole. If a single waiver denial could permanently close the door to U-Visa eligibility, an immigrant who had once been denied would no longer have any incentive to cooperate with law enforcement. This would undercut the fundamental purpose of the regulatory scheme, which is to ensure broad, consistent, and continued cooperation with law enforcement. *See* New Classification for Victims of Criminal Activity; Eligibility for "U" Nonimmigrant Status, 72 Fed. Reg. at 53,019 (Oct. 2007) (the statute "recogniz[es] that [a noncitizen] may apply for U nonimmigrant status as different [parts] of the investigation or prosecution" and if an applicant "refuses to continue to provide assistance to an investigation or prosecution, the purpose of the [the Battered Immigrant Women Protection Act of 2000] is [undercut]"). For this very reason, the agency provided for the refiling of waiver applications, thus ensuring a continued incentive for cooperation based on the potential for a waiver determination to be reevaluated later.

ASISTA has experienced firsthand the chilling effect that USCIS's nondiscretionary, legal errors have had on survivors, many of whom do not have the resources to continue to challenge USCIS's denials of waivers of inadmissibility and U-Visa applications in the face of the government's repeated obstacles to meaningful review. In other words, the government's

13

position and continued conduct has already had a negative impact on survivors seeking to avail themselves of protections that Congress sought to have available.

> **2. Under the government's interpretation of 8 U.S.C. § 1252(a)(2)(B), this refiling of waiver applications would be futile for many applicants.**

To illustrate the absurdity of the government's position, consider what would happen to an applicant like Mr. Rodriguez. Under the government's interpretation, USCIS would be free to misapply the law and the threshold waiver determination—this erroneous misadjudication would be unreviewable by the court.

Then, having been erroneously denied a waiver, Mr. Rodriguez might seek to refile his waiver application later. Importantly, however, in Mr. Rodriguez's case the government concurrently denied *both* his waiver application *and* his U-Visa application. And, under USCIS regulations, only individuals who are "petitioner[s] for . . . U nonimmigrant status" may resubmit their waiver applications. *See* DHS, *Form I-192, Instructions for Application for Advance Permission to Enter as a Nonimmigrant*.[7] Of course, if an applicant's U-Visa petition has already been denied on the merits, then he is no longer a "petitioner for . . . U nonimmigrant status." Thus, people like Mr. Rodriguez—whose U-Visa petition was erroneously denied on the merits—would be unable to refile.

In sum, under the interpretation advanced by the government, the erroneous denial of his waiver application would be unreviewable by this Court. And, so the argument goes, the denial of the waiver (which stands unreviewable by the Court) would preclude the Court from reviewing the U-Visa denial as well. And, the denial of the U-Visa (which also stands unreviewable by this Court) would preclude Mr. Rodriguez from refiling his waiver application

---

[7] https://www.uscis.gov/sites/default/files/document/forms/i-192instr.pdf.

14

for reconsideration. Consequently, because he cannot refile his waiver application, he—and any U-Visa applicant facing this quagmire—has no way of receiving the due process put in place by Congress for U-Visa applicants.

The initial erroneous denial of the waiver application prevents Mr. Rodriguez from seeking correction of the second erroneous determination (the denial of his U-Visa application), and the inability to correct the erroneous denial of the U-Visa prevents Mr. Rodriguez from refiling the waiver application. Thus, Mr. Rodriguez, and those like him, are caught in a sadistic cycle of misadjudication. Surely this cannot be the situation that Congress intended.

When interpreting a statute, the Court should "interpret the relevant words not in a vacuum, but with reference to the statutory context, structure, history and purpose." *Abramski*, 573 U.S. at 179-183 (rejecting petitioner's reading of a statute because it would "undermine [the law's] core provisions," "defeat the point of [other provisions]," and "deny effect to the regulatory scheme," and because "no part of that [regulatory] scheme would work" under petitioner's interpretation). The government's proposed interpretation of 8 U.S.C. § 1252(a)(2) would undermine the central purpose of the U-Visa program, since the initial (and erroneous) denial of an applicant's waiver could permanently foreclose the applicant's ability to seek a U-Visa, thus removing any continued incentive to cooperate with law enforcement.

## CONCLUSION

In enacting 8 U.S.C. § 1101(a)(15)(U), Congress intended to encourage noncitizen survivors' cooperation with law enforcement agencies. To facilitate that objective, Congress enacted a special, U-Visa–specific waiver provision in 8 U.S.C. § 1182(d)(14). This provision was enacted in recognition of the fact that many U-Visa applicants would require a waiver before applying for a U-Visa and that a special, more lenient standard was needed to ensure broad accessibility of the U-Visa program. The government offers an interpretation of 8 U.S.C. §

15

1252(a)(2)(B) that would undermine this congressional intent by enabling the government to completely ignore the special waiver provision, without any judicial review of this plain legal error. The Court should deny the government's motion to dismiss and exercise subject-matter jurisdiction over this case.

Dated: February 15, 2022

/s/ Sergio F. Oehninger
Sergio F. Oehninger (D.C. ID 486369)
*Pro Hac Vice Forthcoming*
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Phone: (202) 739-3000
Fax: (202) 739-3001
sergio.oehninger@morganlewis.com

/s/ Katherine Vaky
Katherine Vaky (PA # 329291)
*Pro Hac Vice Pending*
MORGAN, LEWIS & BOCKIUS LLP
One Oxford Centre, 32nd Floor
Pittsburgh, PA 15219
Phone: (202) 739-3000
Fax: (202) 739-3001
katherine.vaky@morganlewis.com

*Counsel for Amici Curiae ASISTA Immigration Assistance and Tahirih Justice Center*